IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JOHN PAUL DUNN                                                                           PLAINTIFF

v.                                         Civil No.: 6:16-CV-6006

JAILER RANDY WYNDHAM, JAIL                                                        DEFENDANTS
ADMINISTRATOR JAMES MAYHUE,
JAILER FOLEY and JAILER NATE
MORRISON

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is Defendants' Summary Judgment Motion. (ECF Nos. 65, 66, 67, 69).

### I. BACKGROUND

**A. Procedural Background**

Plaintiff filed his Complaint on January 22, 2016, alleging several constitutional violations. (ECF No. 1). On January 22, 2016, the Court entered an Order terminating the Eastern District of

Arkansas Defendants.[1] On September 13, 2016, additional Defendants were dismissed pursuant to PLRA pre-service screening.[2]

On September 22, 2016, Defendants Avant, Bethel, and Collier filed a Motion to Stay the case because Plaintiff's pending criminal trial stemmed from the same drug arrest in July 2014 which gave rise to this case. (ECF Nos. 25, 26). At the time of the motion, the criminal trial had been continued several times because Plaintiff was mentally unfit to stand trial. (ECF No. 25). On October 28, 2016, this case was stayed pending conclusion of Plaintiff's state court criminal proceeding arising from the some of the same facts as this case. (ECF No. 30). On November 20, 2017, Defendants Avant, Bethel, and Collier filed a Motion to lift the stay. (ECF No. 33). On November 28, 2017 the stay was lifted, and the case proceeded. (ECF No. 34). The claims remaining for adjudication were for false arrest and imprisonment against Defendants Collier, Bethel, Watson, Forga, Avant, Morrison, Cain, and Whitworth. Plaintiff's claim for denial of medical care against Mayhue, Wyndham, Morrison, and Foley also remained. (ECF Nos. 12, 18).

On November 29, 2018, Defendants Collier, Bethel, Watson, Forga, Avant, Morrison, Cain, and Whitworth filed a Motion to Dismiss regarding Plaintiff's false arrest and imprisonment claims. (ECF Nos. 37, 28). On August 7, 2018, Plaintiff's claims for false arrest and imprisonment were dismissed. (ECF Nos. 59, 61).

On December 17, 2018, Defendants Mayhue, Wyndham, Morrison, and Foley filed their Motion for Summary Judgment for Plaintiff's denial of medical care claim. (ECF Nos. 65, 66, 67,

---

[1] The Eastern District Defendants were: Kara Belue, Billy Burris, Dr. Paul Dayoub, Carla Owen, David Joslin, Alexandra Blondell, Michelle Messer, Larry Smith, Meslissa Kaiser, Nikki Shycanna Walker, Cheryll Piggee, Joshua Dixon, Christi Wardlaw, David Contrearas/Dr. Simon, A. Sunder/Dr. Peacock, Dr. Robert Forest, Dr. Peacock, Dr. Strode, Dr. Dr. Simpson, Dr. Wall, John Allen, Dr. Michael Saccente, and the Arkansas Department of Human Services.

[2] The Defendants terminated at preservice screening were: Timothy Beckham; Judge Robert McCallum; Judge Randy Hill; Blake Batson; Deputy J.D. Crowe, Jr.; Jailer Robert Williams; Jailer Archer; Janice Williams; Clark County, Arkansas; City of Arkadelphia; and City of Caddo Valley.

69). That same day, the Court entered an Order directing Plaintiff to respond to the Motion by January 7, 2019. (ECF No. 68). To date, Plaintiff has failed to respond to the Motion for Summary Judgment.

In the Order directing him to Respond to the Summary Judgment Motion (ECF No. 68), Plaintiff was advised that failure to comply with the Court's Order would result in: (a) all of the facts set forth by the Defendants in the summary judgment papers being deemed admitted by Plaintiff, pursuant to Local Rule 56.1(c); and/or, (b) shall subject this case to dismissal, without prejudice, pursuant to Local Rule 5.5(c)(2).

The Court must consider the facts set forth in Plaintiff's verified Complaint in ruling on the Summary Judgment Motion. A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See, e.g., Roberson v. Hayti Police Dep't.*, 241 F.3d 992, 994-95 (8th Cir. 2001).

As the Court in *Roberson* pointed out, "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion. *Id.* The Court will "piece[ ] together [Plaintiff's] version of the facts from the verified complaint. . . ." *McClanahan v. Young*, No. 4:13-cv-04140, 2016 WL 520983, *1 (D.S.D. Feb. 5, 2016) (citing *Roberson v. Hayti Police Dep't.*, 241 F.3d 992 (8th Cir. 2001)). "Those portions of the Defendants' statement of material facts that do not conflict with [Plaintiff's verified complaint] are deemed admitted." *McClanahan,* 2016 WL 520983, at *1.

### B. Denial of Medical Care Claim

It is first necessary to define the scope of Plaintiff's claim, as his Complaint includes timeframes when he was not incarcerated in the Clark County Detention Facility ("CCDF"). Plaintiff alleges he was denied treatment for (1) HIV; (2) "ADD/ADHD

3

amphetamine/methamphetamine;" and (3) an abscessed tooth while he was incarcerated in CCDF.[3] He alleges this occurred between July 9, 2014, until he signed his Complaint on January 11, 2016. (ECF No. 1 at 17-18, 27). Defendants indicate Plaintiff was in the custody of CCDF starting July 9, 2014; his attorney sought an order for mental evaluation on October 14, 2014; he was ordered to the custody of the Arkansas State Hospital ("ASH") on April 14, 2015; and he was admitted to ASH on July 23, 2015. He was then discharged from ASH on or about February 10, 2016. (ECF Nos. 66 at 3; 67 at 1). His claim is therefore limited to the months of July 9, 2014 through July 23, 2015. Plaintiff was discharged from ASH on February 10, 2016. (ECF No. 67-8 at 20). On February 22, 2016, approximately a month after Plaintiff signed his Complaint, the Court entered an Order changing Plaintiff's address back to CCDF. (ECF No. 6).

Plaintiff alleges Defendant Mayhue (Jail Administrator) failed to act within "the standards and care. Violated state + federal laws wasn't treated for HIV, Absess [sic] tooth or given pain medication. Lost years of my life irrepairable [sic] damage to heart liver immune system function loss of teeth." (*Id*. at 18). He further alleges Defendant Mayhue failed to "do any education of training and knowledge to do the job. Failure to have trained medical staff on duty 24 hrs a day."[4]

Plaintiff alleges Defendant Wyndham (Jailer):

> would not listen to anything I or any other prisoner would say. Your supposed to get Tylenol at 8pm but you can't save it or is contraband If you have a medical emergency at 3am your just out of luck. Loss of teeth loss of immune function = years of life.

---

[3] The exact wording of Plaintiff's claim is as follows: "Denial of medical care (medibolics [sic] HIV) (ADD/ADHD amphetamine/methamphetamine) absess [sic] tooth."

[4] A prison does have a duty to "promptly provide necessary medical treatment for prisoners," including access to 24-hour emergency care. *Johnson v. Bowers*, 884 F.2d 1053, 1056 (8th Cir. 1989), *modified on reh'g* (Oct. 27, 1989). This Court, however, cannot find any authority requiring a county jail to have in-house medical staff on hand to provide care for inmates twenty-four hours a day, seven days a week. This allegation will therefore not be addressed.

(*Id*. at 18). Plaintiff alleges Defendant Wyndham failed to have appropriate training in the jail, failed to have continuing education, failed to contact emergency medical personnel, and was not trained in anything other than CPR. (*Id*. at 19). Plaintiff does not identify the medical emergency in question.

Plaintiff alleges Defendant Morrison (Jailer) failed to contact medical personnel in an emergency situation, failed "to act withing [sic] standards of jails," failed to do hourly rounds to check on prisoners, and failed to dispense medication when needed. He alleges this caused him the loss of his immune system, teeth, and "lost years of my life." (*Id*. at 19-20). Plaintiff does not identify the medical emergency in question or the medication he was allegedly denied. In his deposition on November 6, 2018, Plaintiff identified an abscessed tooth as the medical emergency in his Complaint. (ECF No. 67-5 at 32-35). [5]

Plaintiff alleges Defendant Foley (Jailer) failed to act within jail standards, "failed to render aid immediately once notified." He alleges this caused him the loss of teeth, loss of life and loss of immune function. He alleges Defendant Foley failed to be properly trained and failed to have continuing education. (*Id*. at 20). Plaintiff does not identify what incident or condition required immediate aid.

Plaintiff proceeds against Defendants in both their personal and official capacity. (ECF No. 1 at 18-20).

---

[5] Plaintiff also testified he "thought he was having a heart attack one time" but did not remember the date of this incident. (ECF No. 67-5 at 43). As Plaintiff did not include any allegations of a heart attack in his Complaint, this allegation will not be addressed. Plaintiff also testified that "every day was a medical emergency" because "those idiots" gave him "full-blown AIDS." (*Id*.). Plaintiff did not identify any specific symptom or incident other than the fact of his HIV-positive status. Plaintiff's HIV status, alone, will not be considered a medical emergency. *See McLanahan*, 2016 WL 520983, at *6 (citing *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) and *Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998)) ("Conclusory, non-specific statements in an affidavit or verified complaint" are insufficient to survive a motion for summary judgment.).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "Conclusory, non-specific statements in an affidavit or verified complaint" are also insufficient. *McLanahan*, 2016 WL 520983, at *6 (citing *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) and *Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998) (Unsubstantiated and conclusory allegations in an affidavit, standing alone, "cannot create a genuine issue of material fact precluding summary judgment.")). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In this case, the facts set forth by the Defendants are deemed admitted except to the extent contradicted by the verified complaint. The question is given the facts as pieced together by the Court, whether there are genuine issues of material fact as to whether Plaintiff's constitutional rights were violated.

### III. ANALYSIS

Defendants argue they are entitled to summary judgment in their favor because: (1) there is no verifying medical evidence that any delay in medication or treatment had a detrimental effect on Plaintiff's prognosis; (2) Defendants are not medical professionals and did not have the power to administer medications or medical treatment other than as directed by medical professionals; (3) Defendants are entitled to qualified immunity; and (4) there is no basis for official capacity liability. (ECF No. 66).

Plaintiff failed to submit a Response to these arguments. Plaintiff did file a verified Complaint and the Court has reviewed the Complaint to determine if it contains summary judgment facts in opposition to the Motion for Summary Judgment. The verified Complaint does not contain any objective medical evidence to support his allegations. Defendants, in contrast, provided medical records from both ASH and the University of Arkansas for Medical Sciences ("UAMS") to support their arguments. (ECF Nos. 65-1, 65-2, 65-3, 65-4, 65-8). Plaintiff's allegations in his Complaint do not contradict that he was treated at ASH or UAMS. Defendants' Statements of Fact regarding his treatment at ASH and UAMS are therefore deemed admitted. Likewise, nothing in Plaintiff's verified Complaint contradicts Defendants' evidence or Statements of Fact concerning the policies and procedures at CCDF, or that Compass Healthcare, LLC is responsible for providing medical care at the facility. These facts are therefore also deemed admitted.

### A. Denial of Medical Care

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff

8

deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted). Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment, and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104–05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis[,]'" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub,* 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

   1. **ADHD/ADD**

Plaintiff alleges in his verified Complaint that he was denied treatment for "ADD/ADHD amphetamine/methamphetamine." This allegation fails to meet the objective prong of the deliberate indifference standard because it is both unsubstantiated and contradicted by the record.

It is undisputed that Plaintiff was initially unfit to stand trial due to mental health issues and committed to ASH for evaluation and treatment. Despite voluminous records from both ASH

9

and UAMS, there is no evidence in the record that he was ever diagnosed with ADHD/ADD at either of these facilities.[6] His discharge diagnosis from ASH on February 10, 2016, lists the following conditions: Bipolar Disorder by history, Paranoid Personality Disorder, HIV, Coronary Artery Disease, Hypertension, GERD, Genital Herpes, Hyperlipidemia, and seasonal allergies. (ECF No. 67-8 at 25).

Nor did Plaintiff describe any symptoms which a layperson would be expected to easily recognize as requiring immediate treatment for ADHD/ADD as opposed to other mental health issues. Instead, he testified in his deposition that "I can't pay attention, can't remember nothing . . . my speech is rapid, pressured, tangential." He testified other people think he is on drugs if he is not taking his ADHS/ADD medication. (ECF No. 67-5 at 25-26). *See e.g. Weaver v. Lombardi*, Case No. 4:15-CV-0018 (CEJ), 2015 WL 7253059, at *3 (E.D. Mo. Nov. 17, 2015) ("Without sufficient evidence to support a diagnosis of ADHD or symptoms or indicators of a serious medical condition so obvious that a layperson would recognize the need for medical attention, plaintiff fails to establish the objective component of a deliberate indifference claim."); *see also Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (Inmate's "self-diagnosis alone cannot establish that he does, in fact, suffer from kidney stones and the available medical evidence does not support his self-diagnosis.")

Thus, the summary judgment evidence of medical records before the Court wholly contradicts Plaintiff's allegation of denied treatment for his ADHD/ADD. Plaintiff's unsubstantiated and conclusory allegation, standing alone, does not create a genuine issue of material fact precluding summary judgment. Because Plaintiff failed to satisfy the objective prong

---

[6] A notation in the ASH records indicates Plaintiff was apparently prescribed Desoxyn (methamphetamine hydrochloride) at some point in the past. This drug was identified as a legal medication for ADHD. (ECF No. 67-8 at 9-10). The provider of this prescription was not identified and there are no diagnoses of ADHD in the record before the Court. Thus, it is not clear if he received the prescription for ADHD or some other condition.

of the deliberate indifference standard regarding his ADHD/ADD, Defendants are entitled to summary judgment for this claim.

### 2. Abscessed Tooth

Plaintiff alleges in his verified Complaint that he was denied medication and treatment for an abscessed tooth. These allegations fail to meet the objective prong of the deliberate indifference standard because they are unsubstantiated and contradicted by the record, including Plaintiff's own deposition testimony. Further, there is no objectively verifiable medical evidence showing that any delay adversely affected his dental prognosis.

CCDF has a contract with Compass Healthcare, LLC to provide medical care to detainees. (ECF No. 69-2 at 2). CCDF employees are trained in basic first aid, and to seek emergency medical assistance if necessary by contacting paramedics or taking a detainee to the emergency room. (*Id*.). Nurse Practitioner Gonzales of Compass Health stated in her affidavit that a painful tooth, alone, does not constitute a medical emergency. (ECF No. 69-1 at 2).

In his deposition, Plaintiff testified he thought his tooth pain began on a Thursday night. At that time he lay on the floor and "yelled through the sink" to get the attention of the guards in the "tower." (ECF No. 67-5 at 33, 35). On either Friday or Saturday of that same week, Defendant Mayhue told him that an appointment had been made for him with a dentist on Monday. (*Id*.). According to Plaintiff, Mayhue "made an appointment and I told him it was an emergency." Mayhue then told him it would be Monday before he could go. (*Id*. at 34). Plaintiff then lay down on his bed and waited, having to "bear the pain the whole time." (*Id*. at 35). Plaintiff described the physical symptoms of his tooth as "If you've never had an abscessed tooth, my whole jaw down here on my chin was like a knot out here., and . . . if I could have got a pair of pliers I would have pulled it myself." (*Id*.). Plaintiff was seen by a dentist on Monday as scheduled. The dentist took an x-ray and asked Plaintiff "What do you want me to do?" Plaintiff told the dentist "I want

you to stop my pain. Pull the tooth. I don't give a damn about the tooth." (*Id*. at 35-36). The tooth was pulled and "that issue stopped." (*Id*. at 36).

Regarding pain medication for his tooth during that three-day period, Plaintiff alleged in his Complaint that inmates were given Tylenol at 8:00 pm, and if they saved the medication for an emergency at 3:00 am rather than taking it, the medication would be considered contraband. (ECF No. 1 at 18). In his deposition, he testified that inmates had to get Tylenol at 8:00 pm and take it at 8:00 pm. If you need pain medication at 2:00 am "you're out of luck. . .Well, Tylenol only lasts, the half-life is maybe two hours or whatever, and, if you get it, you save it. And they come into your cell and look, then they are going to say you got contraband and they're going to throw it away." (ECF No. 67-5 at 30). Plaintiff further alleges they kept changing the time for medication. (*Id*. at 31). The jail policy provided by Defendants states: "Jailers will administer medications to the Detainees as prescribed. Medication will be given four times a day, After Breakfast, After Lunch, After Dinner, and at Bedtime." (ECF No. 67-7 at 1).

The Eighth Circuit has reversed the grant of summary judgment in a number of cases where prison officials or prison dentists "delayed three weeks or more in providing dental care for an inmate whose mouth showed obvious signs of serious infection, such as swelling, bleeding, or pus, and who complained of severe tooth pain." *Hartsfield v. Colburn*, 491 F.3d 394, 397 (8th Cir. 2007) (collecting cases). There was no such delay in this case. Instead, Plaintiff's dental appointment was made one or two days after he alerted jail staff about his tooth, and he received his requested treatment for his tooth by a dentist within three days. He also does not describe any physical symptoms from his tooth which would indicate signs of serious infection, such as severe swelling, bleeding, or the oozing of pus. Further, based on his own testimony, he received Tylenol for his pain. By his own admission, did not always take the Tylenol when it was given, instead

trying to save it for a potential late-night "emergency." These are not the actions of an inmate suffering from unmitigated dental pain. That Plaintiff was unhappy with the characterization of his tooth as a non-emergency and with his inability to save his Tylenol for a potential "emergency" does not convert his claim to one of constitutional dimension. *See Nelson,* 603 F.3d at 449 ("[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation.") (internal citation omitted).

Finally, Plaintiff has provided no objectively verifiable medical evidence that the three-day delay in treatment for his tooth adversely affected his dental prognosis, and the Court can find none in the medical record. Plaintiff testified that he wished to have the tooth pulled and would have pulled it himself if possible. When the dentist had examined him and x-rayed his tooth, he asked Plaintiff how he wanted to proceed, and Plaintiff instructed him to pull the tooth. Plaintiff testified that this solved his dental issue. Without verifying medical evidence to show that the three-day delay in providing dental treatment adversely affected his dental prognosis, and without physical symptoms that a layperson could easily interpret as a medical emergency, Plaintiff has not satisfied the objective prong of the deliberate indifference standard. *See Dulany*, 132 F.3d at 1243 ("The objective portion of the deliberate indifference standard requires a showing of 'verifying medical evidence' that the defendants ignored an acute or escalating situation or that delays adversely affected the prognosis given the type of injury in this case.")

Thus, the medical record before the Court contradicts Plaintiff's allegations of denied treatment for his tooth. Further, Plaintiff's unsubstantiated and conclusory allegations, standing alone, cannot create a genuine issue of material fact precluding summary judgment. Because Plaintiff's allegations concerning his tooth are unsubstantiated and contradicted by the record, and

because he failed to provide any verifiable medical evidence showing that a four-day delay in treatment adversely affected his dental prognosis, he failed to meet the objective prong of the deliberate indifference standard. Defendants are therefore are entitled to summary judgment for this claim.

### 3. HIV Medication

Plaintiff alleges in his verified Complaint that he did not receive his prescribed HIV medication during his incarceration at CCDF. The time frame for this claim is July 9, 2014 through July 23, 2015. This allegation fails to meet the objective prong of the deliberate indifference standard because it is both unsubstantiated and contradicted by the record. Further, there is no objectively verifiable medical evidence showing that any delay adversely affected his HIV or overall health prognosis.

There is no evidence in the record that Plaintiff ever communicated his need for HIV treatment to any of the Defendants for this time-period. Plaintiff did not allege in either his Complaint or his deposition that he told any of the named Defendants that he needed HIV treatment. He testified he was diagnosed with HIV in 1996 and was supposed to stay on his HIV medications "religiously," which he did until he was arrested. (ECF No. 67-5 at 22). He did not, however, have any HIV medication when he was first booked into CCDF. (*Id*. at 40). He was also quite vague and inconsistent as to the source of his HIV medication and where that medication was mailed to him. (*Id*. at 27, 41). He testified he sent grievances and letters to Larry Cain, the jail administrator "at that time," who told him that he would not receive treatment for HIV while he was in the facility. (*Id*. at 23). There is no evidence of these grievances or medical requests in the record, despite a clear medical grievance policy at CCDF. (ECF No. 67-7 at 3). Plaintiff further testified that he tries to keep his HIV "off the radar" and "usually had doctors which weren't even aware of my HIV" to avoid prejudice in employment decisions. (ECF No. 67-5 at 25).

14

Even if the Court assumes Plaintiff communicated his need for HIV treatment to the Defendants in this case, his claim fails to meet the objective prong of the deliberate indifference standard. When asked the symptoms of his HIV, he stated that his CD4 level[7] goes down, then the viral load goes up, and then he becomes susceptible to opportunistic infection. He attributes the loss of his tooth and a case of bronchitis on the denial of his HIV medication. (*Id*. at 28-29). He attributes his claim of "lost years of life" to lung damage caused by being sick in jail. (ECF No. 67-5 at 31). Plaintiff did not allege he had any lung damage in his Complaint.

Plaintiff further testified that it is necessary to take HIV drugs regularly or the virus can develop resistance to the drugs. "[T]here are only so many drugs you can take and if you burn through all of them you are done. You can't take any more medications and then you let it go ahead and kill you." (*Id*. at 36-37). Defendants were unable to provide a record of medication administration at CCDF for the time-period of this case. (ECF No. 66 at 5). Plaintiff's medical records from ASH and UAMS were provided, however, which begin with his admission to ASH on July 23, 2015. (ECF Nos. 67-3, 67-8). These records continue through his return to CCDF in early 2016 and his subsequent transfer to the Arkansas Department of Correction ("ADC"). None of these records contain any diagnosis or statement indicating that Plaintiff's HIV or overall health prognosis was adversely affected by the alleged denial of HIV medication at CCDF.

On July 24, 2015, Plaintiff underwent a physical examination at ASH. Routine labs were recommended, and a referral to the Infectious Disease Clinic at UAMS was ordered. (ECF No. 67-8 at 21). Plaintiff was seen at UAMS on August 17, 2015, to establish care. The assessment

---

[7] Human immunodeficiency virus (HIV) destroys CD4 lymphocytes. Acquired Immune Deficiency Syndrome (AIDS) is considered symptomatic at CD4 levels below 200/ul. Treatment goals with medication are to reduce the plasma HIV RNA level to undetectable (< 20-50 copies per ml) and restore the CD4 count to a normal level. https://www.merckmanuals.com/professional/infectious-diseases/human-immunodeficiency-virus-hiv/human-immunodeficiency-virus-hiv-infection. (accessed Jan. 17, 2019).

notes indicate Plaintiff would be restarted on Combivir (identified by Plaintiff as his prior HIV drug regimen) at ASH. PCP prophylaxis (Bactrim) was prescribed due to a CD4 count of 133. (ECF No. 67-2 at 52).

On October 26, 2015, Plaintiff was seen at UAMS for a follow-up examination. (ECF No. 67-2 at 57). According to the notes for this visit, Plaintiff had been started on his HIV medication, but new labs had not been drawn at ASH. The physician noted that although Combivir was less effective and more toxic to HIV patients than the currently recommended regimen, Plaintiff had requested the Combivir. The notes indicated new labs needed to be drawn before switching him to the recommended drug regimen. (*Id*. at 62-63).

Plaintiff was seen again at UAMS on January 11, 2016. (ECF No. 67-3 at 2). The assessment notes indicate Plaintiff had a "suppressed viral load and acceptable CD4 count, no need for antibiotic prophylaxis." (*Id*.). Plaintiff had indicated he was open to trying a more modern HIV regimen, and the physician expressed a desire to move him to Complera. (*Id*. at 1-1).

On February 1, 2016, Plaintiff was still taking Combivir. He had an "undetectable viral load, with a CD4 count of 513." He was open to switching to Complera. (*Id*. at 36). On April 6, 2016, it was noted that he had been started the HIV medication Triumeq due to a contraindication between the Complera and one of his other medications. (*Id*. at 51). On February 27, 2017, and September 19, 2017, Plaintiff was described as asymptomatic, "doing well with virologic suppression and immunologic response on an antiretroviral regimen of Triumeq." (*Id*. at 60, 66; 67-4 at 7, 12).

On February 21, 2018, the medical record states his Triumeq was interrupted three months ago, resulting in a viral load of 22,000 copies. After being placed back on Triumeq for about two and on-half months, the viral load was reduced to less than 40 copies and his CD4 was 568. (67-

16

4 at 31). On August 13, 2018, Plaintiff was seen for a urinary issue. There was no discussion of his HIV status. (*Id*. at 35-52).

None of these medical records include any notations which state that Plaintiff's HIV or overall health prognosis was adversely affected by the alleged denial or delay of HIV medication during his incarceration in CCDF. To the contrary, there are repeated assessment notes indicating Plaintiff is "doing well." It is undisputed that his CD4 count was low and he required antibiotic prophylaxis on his first visit to UAMS in July of 2015 after leaving CCDF. However, when Plaintiff was restored on his original drug regimen of Combivir, his CD4 levels and viral load responded positively to the medication. With the first set of labs drawn after he restarted the Combivir, Plaintiff exhibited a suppressed viral load, acceptable CD4 count, and no need for antibiotic prophylaxis in early 2016. Although Plaintiff's HIV regimen was subsequently changed, medical notations indicate it was done to switch him to a more effective and less toxic drug regimen, not because the Combivir had stopped working for him due to viral resistance. In 2017 Plaintiff described as asymptomatic for his HIV, "doing well" with virologic suppression and immunologic response. Nor do Plaintiff's allegations of CD4 level decrease or a painful tooth describe symptoms that a layperson could easily identify as an acute or escalating issue caused by the alleged denial of his HIV medication. Without verifying medical evidence to show that the denial of HIV medication adversely affected his HIV or overall health prognosis, and without physical symptoms that a layperson could easily interpret as an acute or escalating situation, Plaintiff has not satisfied the objective prong of the deliberate indifference standard. *See Dulany,* 132 F.3d at 1243 ("The objective portion of the deliberate indifference standard requires a showing of 'verifying medical evidence' that the defendants ignored an acute or escalating situation or that delays adversely affected the prognosis given the type of injury in this case.").

Thus, the record before the Court contradicts Plaintiff's allegations of deliberate indifference to his HIV treatment needs. Further, he failed to provide any objectively verifiable medical evidence that the alleged denial of HIV treatment in CCDF adversely affected his HIV or overall health prognosis, and the Court can find none in the medical record. Plaintiff's unsubstantiated and conclusory allegations, standing alone, cannot create a genuine issue of material fact precluding summary judgment. Because Plaintiff failed to meet the objective prong of the deliberate indifference standard, Defendants are entitled to summary judgment for this claim.

### B. *Respondeat Superior*

Even if any of Plaintiff's allegations had risen to the level of a constitutional violation, it does not appear that Defendants would be liable, as they are not medical professionals, and were not responsible for decisions concerning Plaintiff's medical care.

Further, a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)); s*ee also Kulow v. Nix*, 28 F.3d 855,

859 (8th Cir. 1994) ("if any claim of medical indifference . . . is to succeed, it must be brought against the individual directly responsible for [Plaintiff's] medical care.").

Here, Defendants have provided documentation indicating CCDF employees are trained in basic first aid, and to seek emergency medical assistance if necessary by contacting paramedics or taking a detainee to the emergency room. (ECF No. 69-2 at 2). All non-emergency medical care at the CCDF is provided by Compass Healthcare, LLC. (ECF No. 69-1 at 1). All decisions regarding medications, medical testing, or medical treatment are left to the professional medical judgment of the physician or medical provider at the detention facility. (ECF Nos. 69-1 at 7, 69-2 at 2). Further, CCDF has no policy, practice, or custom that requires a medical provider to consult with any Clark County employee before prescribing any medication, testing or treatment. (ECF No. 69-1 at 7; 69-2 at 3). Written policy of the facility states "Jailers will administer medications to the Detainees as prescribed." (ECF No. 67-7 at 1). Nurse Gonzalez stated she was not aware of any intentional or systematic denial of prescribed or needed medications at the facility, and she worked closely with his doctors at UAMS to care for Plaintiff's medical needs. (ECF No. 67-1 at 1).

The Defendants in this case are the Sheriff, Jail Administrator, and two jailers of CCDF. None of these Defendants are medical professionals, and Plaintiff has provided no evidence that they were directly responsible for any alleged denial of medical care. Thus, any decisions concerning Plaintiff's non-emergency medical care were the province of Compass Healthcare, not the Defendants. Defendants would therefore be entitled to summary judgment in their favor even if Plaintiff's allegations had risen to the level of a constitutional violation.

### C.  Qualified Immunity and Official Capacity Claims

As there were no constitutional violations in this case, it is not necessary to address Defendants' arguments concerning qualified immunity or official capacity claims.

## IV. CONCLUSION

Accordingly, I recommend that Defendants' Summary Judgment Motion (ECF No. 65) be GRANTED and Plaintiff's case DISMISSED WITH PREJUDICE.

The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 5th day of February 2019.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE